**Continuation of Application for Search Warrant**

Based on my knowledge, training and experience, and the investigation of law enforcement officers with personal knowledge and with whom I am working, I, Heather Williamson, being duly sworn, depose and state as follows:

## INTRODUCTION

1. Based on the information set forth below, there is probable cause to believe that evidence of violations of federal law, specifically, Title 21, United States Code, Sections 841(a)(1) and 846, Conspiracy to Possess with Intent to Distribute Controlled Substances, will be found on certain electronic devices (hereinafter the "**Subject Devices**," described more fully in Attachment A). The categories of electronically stored information and evidence sought are described in Attachment B.

2. This Application requests the issuance of a warrant to examine the **Subject Devices** which were seized on August 11, 2020, following the execution of a search warrant at G's T-Shirt Outlet & More located at 2110 Evanston Avenue in the City of Muskegon which resulted in the seizure of the **Subject Devices** and approximately 633 grams crystal methamphetamine and a small quantity of crack cocaine.

## APPLICANT'S TRAINING AND EXPERIENCE

3. I am a Special Agent of the Drug Enforcement Administration ("DEA") and have been so employed since January 2013. I am currently assigned to the Grand Rapids District Office. Previously, I was assigned to the Southwest Border Initiative Group-3 ("SWB-3") and to the Los Angeles Strike Force for approximately six years.

The Los Angeles Strike Force is an investigative group jointly led by the DEA and FBI, and composed of several other federal, state, and local agencies that is focused on the disruption of the Mexico-based Sinaloa Cartel. I completed 20 weeks of training at the DEA Academy in Quantico, Virginia, which included narcotics identification, detection, trafficking, and interdiction; money laundering techniques; asset identification, seizure, and forfeiture; and techniques used by narcotics traffickers to avoid detection by law enforcement officials. I have investigated drug trafficking organizations in relation to violations of federal laws such as unlawful importation of controlled substances, the distribution of controlled substances, manufacturing controlled substances, and possession with intent to distribute controlled substances, including cocaine, methamphetamine, heroin, and other dangerous drugs, as well as money laundering.

4.      I also know from training and experience that drug traffickers frequently utilize mobile telephones and other electronic devices, such as tablets and laptop and desktop computers, to facilitate drug trafficking. Mobile telephones are portable, and some mobile telecommunications service providers do not require purchasers of the devices to provide their names and/or addresses, so narcotics traffickers often use the devices in an effort to avoid detection by law enforcement. Mobile phones often contain evidence indicative of drug trafficking, including records of incoming and outgoing calls and text messages with suppliers of narcotics; voicemail messages; photographs of drugs, coconspirators, or currency; and, in the case of "smart phones," Global Positioning System (GPS) data indicating the location

of the device at given points in time, providing evidence that the device was in high drug trafficking areas or evidencing the route used in trafficking narcotics. Additionally, drug traffickers typically maintain and use multiple mobile phones to facilitate sales, and frequently switch phones to evade detection by law enforcement. Further, these types of devices are frequently used to access social media websites such as Facebook, Instagram, etc. In my training and experience, drug traffickers are using social media with increasing frequency to communicate with suppliers and purchasers of narcotics.

## PROBABLE CAUSE

5. This affidavit is based on a DEA, Michigan State Police ("MSP"), and West Michigan Enforcement Team ("WEMET") investigation into the drug trafficking activities of GERMAINE LANG and other known and unknown drug associates.

6. During the course of the investigation, investigators identified GERMAINE LANG through multiple controlled drug purchases utilizing a WEMET Confidential Source ("CS"). GERMAINE LANG's criminal history includes felony convictions for delivery/manufacturing controlled substance less than 50 grams, felony possession of controlled substance less than 25 grams, and felony carrying concealed weapon.

7. Between June 16, 2020, and August 5, 2020, investigators utilized a WEMET CS to conduct the following controlled purchases from GERMAINE LANG at 2110 Evanston Avenue in the City of Muskegon:

    a. CS controlled purchase of 221 grams of crystal methamphetamine on June 16, 2020; and

    b. CS controlled purchase of 80 grams of crystal methamphetamine on August 5, 2020.

8. CS used a cell phone to contact LANG and arrange each of those controlled purchases.

9. On August 11, 2020, the Honorable Phillip J. Green, United States Magistrate Judge signed Warrant No. 1:20-mj-323 authorizing the search of G's T-Shirt Outlet & More located at 2110 Evanston Avenue, Suite B, Muskegon, Michigan.

10. On the same date, at approximately 5:00 p.m., investigators executed the federal search warrant at the location listed above. Upon entry to the business, investigators identified GERMAINE LANG and a female customer inside. GERMAINE LANG was taken into custody without incident and the female customer was removed from the business without incident. Kent County Sheriff's K9 Deputy Moorehead and canine partner conducted a preliminary search of the store, resulting in the alert for the presence of narcotics on a closet in the southeast corner of the store.

11. A search of the closet by Detective Schmidt yielded the seizure of approximately 633 grams crystal methamphetamine, a black digital scale, plastic bag packaging and a box of baking soda. Detective Schmidt located a men's button down shirt hanging in the closet which yielded a quantity of marijuana, unknown pills, suspected crack cocaine, an unknown powder and additional crystal

methamphetamine.  Suspected drugs were individually field-tested and TruNarc resulting in positive tests for methamphetamine and cocaine base, along with one inconclusive test. Suspected drugs have been sent to the DEA North Central Lab and/or MSP Lab for further testing.

12. I located **Subject Device #1** on the cash register counter on the north side of the business where GERMAINE LANG was standing when investigators entered the shop.  Detective Liskey located **Subject Device #2** in the front pocket of GERMAINE LANG, along with a driver's license and a quantity of cash.

13. Based on the totality of the circumstances discussed above, there is probable cause to believe that the **Subject Devices** will contain contact lists, telephone logs, photographs and other data that relate to drug trafficking and drug traffickers.  A description of each device and its location and relevance to the investigation is described below:

   a. Grey LG cellphone with clear plastic case, Model LM-X420MM  (Subject Device #1)

   b. Blue Alcatel brand flip cellphone (Subject Device #2)

14. The **Subject Devices** are currently in storage at the WEMET office in Muskegon, Michigan.  The **Subject Devices** have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the **Subject Devices** were first seized by DEA and WEMET on August 11, 2020.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

15.     The warrant applied for would authorize the extraction and copying of electronically stored information, all under Rule 41(e)(2)(B).

16.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

17.     *Forensic evidence.*   As further described in Attachment A, this application seeks permission to locate forensic electronic evidence that establishes how the **Subject Devices** were used, the purpose of the use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Subject Devices** because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

18.  *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Subject Devices** consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

19.  I respectfully submit that there is probable cause to believe that GERMAINE LANG  engaged in the distribution of, and in the possession with intent to distribute, heroin and cocaine, and that they have conspired to do the same, in violation of 21 U.S.C §§ 841 and 846.  I submit that this application supplies probable cause for a search warrant authorizing the examination of the **Subject Devices** described in Attachment A to seek the items described in Attachment B.